| EBEN BARRA | * | NO. 2022-CA-0122 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| RAYBORN TRUCKING, | * | |
| MARY RAYBORN, CANAL | | FOURTH CIRCUIT |
| INSURANCE COMPANY AND | * | |
| KENNETH DOWNS | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-07667, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge
Tiffany Gautier Chase)

Jake J. Weinstock
Irvy E. Cosse, III
COSSE LAW FIRM, LLC
1515 Poydras Street, Suite 1825
New Orleans, LA 70112

Andrew D. Weinstock
DUPLASS, APLC
433 Metairie Rd, Suite 600
Metairie, LA 70001

      COUNSEL FOR PLAINTIFF/APPELLANT

Guy D. Perrier
Ralph J. Aucoin, Jr.
Kristopher M. Gould
PERRIER & LACOSTE, L.L.C.
365 Canal Street, Suite 2550
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**DECEMBER 16, 2022**

This is a tort case. Plaintiff/appellant, Eben Barra ("Barra"), appeals the July 13, 2021 judgment of the district court and the October 14, 2021 denial of Barra's post-trial motion for judgment notwithstanding the verdict, or alternatively, motion for new trial. For the reasons set forth in this opinion, we affirm.

This litigation stems from an August 21, 2017 collision between an automobile operated by Barra and a tractor-trailer operated by Kenneth Downs ("Downs"), wherein Barra alleges he sustained personal injuries. The collision took place at the intersection of Old Gentilly Road and France Road in New Orleans. At this intersection, vehicles traveling on Old Gentilly Road may either make a soft right turn to proceed onto an overpass on Alvar Street or make a hard right turn onto France Road along the base of the overpass. The facts of the collision are highly disputed. On August 2, 2018, Barra filed a petition for damages against Downs; his employer, Rayborn Trucking; the tractor-trailer's

1

alleged registered owner, Mary Rayborn; and the tractor-trailer's insurer, Canal Insurance Company.[1]

This matter proceeded to a jury trial from May 10 through May 13, 2021, where the jury returned a verdict finding Downs free from liability and dismissing Barra's lawsuit with prejudice. On July 13, 2021, the district court rendered a judgment memorializing the jury verdict. On July 20, 2021, Barra filed a post-trial motion for judgment notwithstanding the verdict ("JNOV"), or alternatively, motion for new trial. A hearing went forward on September 30, 2021, and on October 14, 2021, the district court rendered judgment denying Barra's post-trial motion. This appeal followed.

Barra's sole assignment of error is that the district court erred in denying his post-trial motion for JNOV and/or motion for new trial. However, Barra conceded in the district court, and again in oral argument before this Court, that he is not seeking a JNOV; rather, Barra seeks a new trial because the jury never reached the issue of damages, having found Downs without liability. Moreover, Barra did not brief the issue of damages on appeal. A motion for a new trial may be joined with a motion for JNOV, or a new trial may be prayed for in the alternative. La. C.C.P. art. 1811(A)(2). It is also well-settled that "a motion for a new trial requires a less stringent test than for a JNOV because such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues

---

[1] Kenneth Downs, Rayborn Trucking, Mary Rayborn, and Canal Insurance Company are the defendants/appellees herein. In the remainder of this opinion, we refer to them, collectively, as "Downs."

resolved by a jury." *Harts v. Downing*, 19-0620, p. 5 (La. App. 4 Cir. 6/24/20), 302 So.3d 102, 108 (quoting *Stamps v. Dunham*, 07-0095, p. 7 (La. App. 4 Cir. 9/19/07), 968 So.2d 739, 744). Considering that Barra's burden on a motion for new trial is lighter than that required for a JNOV, and because Barra waived his arguments as to the denial of a JNOV, we consider on appeal whether the district court erred in denying Barra a new trial.

A court of appeal may not set aside the jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993)(citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Snider v. Louisiana Med. Mut. Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323. The appellate court must not re-weigh the evidence or substitute its own factual findings merely because it would have decided the case differently. *Id.* "[W]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong." *Serpas v. Tulane Univ. Hosp. & Clinic*, 13-1590, 13-1591, p. 13 (La. App. 4 Cir. 5/14/14), 161 So.3d 726, 736 (citing *Wallace v. Howell*, 09-1146, p. 2 (La. App. 4 Cir. 1/13/10), 30 So.3d 217, 218). Likewise, "[w]here the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Bellard v. American Central Ins. Co.*, 07-1335, p. 27 (La. 4/18/08),

980 So.2d 654, 672. "This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony." *Id.*

The appellate standard of review for a ruling on a motion for new trial is whether the district court abused its discretion. *Harts*, 19-0620, p. 5, 302 So.3d at 108. A new trial is mandatory when the verdict or judgment appears clearly contrary to the law and the evidence. La. C.C.P. art 1972. However, a jury verdict must not be set aside on the grounds that the verdict is contrary to the evidence if it is supportable by any "fair interpretation of the evidence." *Guillory v. Lee*, 09-0075, p. 38 (La. 6/26/09), 16 So.3d 1104, 1131. In determining whether the verdict is supportable by any fair interpretation of the evidence, the district court has the discretion to weigh the evidence without favoring either party, draw its own inferences and conclusions, and evaluate witness credibility, though the court may not usurp the jury's factfinding role. *Pitts v. Louisiana Med. Mut. Ins. Co.*, 16-1232, pp. 9-10 (La. 3/15/17), 218 So.3d 58, 66; *Martin v. Heritage Manor S. Nursing Home*, 00-1023, pp. 4-5 (La. 4/3/01), 784 So.2d 627, 631.

Barra contends that no reasonable factual basis exists for the jury's finding that Downs was completely without fault for the collision. He argues that Downs' account of the accident was impossible, could not have occurred, was not credible, and was inconsistent with the testimony of the other witnesses. Barra contends that the jury was clearly wrong in failing to find Downs at least comparatively negligent.

4

Numerous witnesses testified at trial, including Barra, Downs, eyewitness Anthony Scott, investigating officer Justin Bush, Barra's expert Michael Gillen, and Downs' expert Douglas Morr. The jury also viewed photographs and body camera footage of the accident scene, along with demonstratives by the experts as to their opinions of how the accident occurred.

Barra testified to his account of the collision. Barra claimed that, just prior to the accident, he drove alongside Downs on Old Gentilly Road for approximately one block, with Barra in the right lane and Downs in the left lane. According to Barra, Downs attempted to turn right from the left lane of Old Gentilly Road onto France Road, striking Barra's vehicle. Barra denied having driven on the curb or sidewalk in an attempt to pass Downs on the right before making the right turn. Barra also stated that his vehicle did not strike the stop sign located on the sidewalk along Old Gentilly Road at the intersection. Barra claimed that, after colliding with Downs, Barra accelerated to free his vehicle from underneath the tractor-trailer and "jump[ed] the curb." At trial, Barra testified that he was proceeding "straight" through the intersection to drive over the overpass. However, Barra gave a differing account of the accident to the investigating officer, stating that he was turning right and assumed that Downs' tractor-trailer was going to go "straight" onto the overpass.

Downs testified to a conflicting version of the accident. According to Downs, he made a button-hook[2] right turn from the right lane, and Barra attempted

_____

[2] Gillen described a button-hook maneuver as: "where he swings wide left and then goes out and comes back to the right." In Gillen's opinion, Downs executed this maneuver incorrectly.

to pass Downs on the right during his maneuver and collided with the tractor-trailer. Downs explained that, before the collision, he stopped at the stop sign, then started again to make the right turn; but, a car was coming from France Road, and he stopped again. Downs initiated his turn before Barra approached. At that point, Barra's and Scott's vehicles were behind the tractor-trailer. Downs stated that, when he initiated the turn, his tractor was fully in the right lane and his trailer was blocking the right lane. Downs executed his turn by proceeding straight ahead until he almost reached Alvar Street, then made a ninety-degree turn. At one point, while turning, Downs' trailer was partially in the left lane and was blocking the right lane. Nevertheless, Barra was able to maneuver to the right side of Downs' trailer. On questioning by Barra's counsel, Downs agreed with the statement that Barra tried to "shoot the gap" to the right of the tractor-trailer in the space created by the turn. Downs stated that to get around him, Downs assumed Barra would have to drive onto the sidewalk. Downs testified that Barra was in Downs' blind spot and he did not see him on the sidewalk or curb. Downs stated that Barra did not collide with the stop sign at the intersection. Downs testified that neither the tractor nor the trailer drove onto the sidewalk.

Scott testified that when he saw the tractor-trailer, it was straddling both lanes; then, both tractor and trailer moved completely into the left lane as Downs approached the stop sign at France Road. Scott testified that Barra began driving on the sidewalk along France Road while attempting to avoid the collision, but the collision occurred before Barra was able to get on the sidewalk. Scott stated that

the tractor-trailer was the distance of seven to eight car lengths ahead of him. Scott denied that Barra had driven alongside the tractor-trailer for an entire block on Old Gentilly Road before approaching the intersection.

Officer Bush testified to his investigation of the accident. He noted that the tire marks in the road were consistent with Downs' vehicle, which he believed supported that Downs began his maneuver from the right lane.

Gillen, a former police officer and Barra's accident reconstruction expert, testified to his opinion that Downs turned right from the left lane while Barra was in the right lane. Gillen stated that the tractor-trailer was too long to make the right turn entirely from the right lane, such that the tractor-trailer would need to be in the left lane or swing out wide and encroach on the left lane. He admitted that during the right turn, Downs would have created an opening on the right between the end of his trailer and the curb, giving room for Barra to attempt to pass Downs on the right, though Gillen would not recommend such a maneuver.

Morr, an engineer and Downs' accident reconstruction expert, testified that the photographs and physical evidence at the scene, shown on the investigating officer's body camera footage, were consistent with Downs initiating the right turn from the right lane and executing a button-hook turn by swinging out left as he turned the corner. According to Morr, Barra started behind the tractor-trailer, overtook it, then slowed again before the collision.

In arguing that a new trial is merited, Barra insists that Downs' version of the accident is impossible. In particular, he contends that Barra could not have

7

driven along the sidewalk without hitting the stop sign, and that Barra and Downs agreed that Barra did not collide with the stop sign. Despite this assertion, we cannot say that the jury verdict is unreasonable or not supported by the evidence at trial.

The jury heard three different factual accounts of the accident from three witnesses at the scene (including the two parties), diverging opinions from the experts hired by each party, along with the investigating officer's observations at the scene. The testimony of Downs, Morr, and Officer Bush supported that the collision occurred while Downs turned right from the right lane. Gillen conceded that Downs could have made the right turn by swinging wide to encroach on the left lane, as Downs described. It was within the province of the jury to weigh the evidence and assess the credibility of all witnesses in determining whether Downs bore any liability for the accident. The jury could have reasonably concluded, based on a fair interpretation of the evidence at trial, that Downs made a right turn from the right lane and that Barra attempted to pass Downs on the right in the space created between the trailer and the curb. In ruling on the motion for new trial, the district court also had discretion to weigh evidence and evaluate witness credibility for the purpose of deciding whether the jury verdict was supportable by any fair interpretation of the evidence. The district court reasonably exercised its discretion in declining to disturb the jury verdict, based on its perception that the jury appropriately weighed the credibility of witnesses and accepted one

permissible view of the evidence over another. We find Barra's argument without merit.

Accordingly, for the reasons set forth in this opinion, we affirm the judgments of the district court, dismissing Barra's lawsuit without prejudice and denying his post-trial motion for JNOV and/or motion for new trial.

**AFFIRMED**